# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 1:21-cv-21952-KMM

JEAN PIERRE,

       Petitioner,

v.

RICKY D. DIXON,[1]
*Secretary, Florida Department*
*of Corrections*,

       Respondent.

_____ /

## REPORT AND RECOMMENDATIONS

**THIS CAUSE** is before the Court upon Petitioner Jean Pierre's ("Petitioner") Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition") (ECF No. 1). This matter was referred to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, by the Honorable K. Michael Moore, United States District Judge, to take all necessary and proper action as required by law with respect to any and all pretrial matters. (ECF No. 4). The Court entered an Order to Show Cause ordering Respondent, Secretary of the Florida Department of Corrections, to file a memorandum of fact and law to show cause why the Petition should not be granted (ECF No. 5). Respondent filed a Response to the Court's Order to Show Cause addressing the arguments raised in the Petition (ECF No. 7), to which Petitioner filed a Reply (ECF No. 9). Having reviewed

---

[1] Ricky D. Dixon became Secretary of the Florida Department of Corrections on November 19, 2021. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Ricky D. Dixon is substituted for Mark Inch as the Respondent in this suit.

the Petition, Response, Reply, the record as a whole, being otherwise fully advised, the undersigned respectfully **RECOMMENDS** that the Petition be **DENIED** as follows.

## I.     BACKGROUND

### A.     Factual Background

Petitioner was charged by Amended Information in the Circuit Court of the Eleventh Judicial District in and for Miami-Dade County, Florida, with (1) retaliating against a witness, in violation of Fla. Stat. § 914.23; (2) attempted armed robbery, in violation of Fla. Stat. §§ 812.13(2)(b), 775.087, 777.04; (3) aggravated assault with a weapon, in violation of Fla. Stat. §§ 784.021(1)(a), 775.087(1); (4) aggravated assault with a firearm, in violation of Fla. Stat. §§ 784.021(1)(a), 775.087; (5) possession of a firearm by a convicted felon, in violation of Fla. Stat. §§ 790.23(1), 775.087; and (6) tampering with a witness, in violation of Fla. Stat. §§ 914.22(1), 914.22(2)(c), 777.011.  (ECF No. 3-1).  The series of events giving rise to Petitioner's criminal charges are as follows.

On March 23, 2012, victim Kiani Brown reported that she was at a bus stop at NW 7th Avenue and NW 36th Street in Miami, Florida waiting for the bus when she was approached by Petitioner.  (ECF No. 3-2 at 2).[2]  Petitioner at the time had a large rock in his hand and walked up to Ms. Brown and said, "Who gonna take the stand if I hit you with this rock, hoe?"  (*Id.*).  Ms. Brown responded, "Please don't hit me.  I have two kids."  (*Id.*).  Petitioner then asked Ms. Brown, "You got any cash for me, hoe?"  (*Id.*).  Ms. Brown replied that she does not have money, solely a bus card.  (*Id.*).  Ms. Brown reported that during this incident she feared for her life.[3]

---

[2]  Citations to documents within the Court's case management and electronic case filing system (CM/ECF) refer to the pagination assigned by CM/ECF to a document (*i.e.*, the page number assigned in the blue text imprinted across the top of the PDF) and not to a document's internal pagination.

[3]  Ms. Brown originally testified for the prosecution and was deposed in a felony case in which Petitioner was a co-defendant and was charged with one count of attempted premeditated murder with a firearm causing serious bodily injury, in violation of Fla. Stat. §§ 777.04(1), 775.087, among other charges.  (ECF No. 3-2 at 1).

Three days later, Ms. Brown was again at a bus stop, at NW 12th Avenue and 67th Street, waiting for the bus to return home.  (*Id.* at 1).  While waiting, a grey Honda Accord drove by.  (*Id.*).  Petitioner was in the front passenger side of the vehicle, which turned into a nearby housing complex.  (*Id.* at 1–2).  The vehicle then returned and stopped in close proximity to where Ms. Brown was waiting.  (*Id.* at 2).  Petitioner's window then rolled down and Ms. Brown stated she saw Petitioner point a firearm at her and start laughing.  (*Id.*).  Ms. Brown stated that she feared for her life.  Ms. Brown then started speaking to an unknown pedestrian, who had just walked up to the bus stop, as if she knew her.  The vehicle then proceeded to drive away from the bus stop.  Ms. Brown then heard gun shots coming from the vehicle.

Ms. Brown recanted after Petitioner was arrested on the above charges.  On July 23, 2012, Ms. Brown authored a sworn affidavit, (the "2012 Affidavit"), within which Ms. Brown attested that she contacted Petitioner's trial counsel and requested a meeting at his office.  (ECF No. 3-4 at 1).  Ms. Brown attested that neither incident on March 23, 2012 nor March 26, 2012 occurred.  Ms. Brown further stated that, for the March 26, 2012 incident, she "never [hung] around this street and/or area and [had] moved away from [that] area."  (*Id.*).  Ms. Brown claimed that she had not seen Petitioner since seeing each other in court and that she was concerned someone was making police reports using her name.  (*Id.*).  Ms. Brown further attested that she signed the affidavit of her own free will without coercion.  (*Id.*).

After the 2012 Affidavit was presented, Ms. Brown provided several other statements prior to Defendant pleading guilty.  Detective Roderick Passmore, a homicide detective with the City of Miami Police Department,[4] spoke to Ms. Brown over the phone.  (ECF No. 3-5 at 3).  During this discussion, Ms. Brown stated that she went to Petitioner's counsel's office because people were

---

[4] (ECF No. 3-11 at 3).

threatening her and she was fearful of retaliation for her cooperation.  (*Id.*).  In a later statement taken by Detective Passmore, Ms. Brown attested that she was in fact threatened with a rock and a firearm by Petitioner on March 23 and 26, 2012.  (ECF No. 3-11 at 4).

Approximately three months later, state prosecutors met with Ms. Brown.  At this meeting, Ms. Brown stated that she had not signed the 2012 Affidavit and that the signature on the Affidavit was not hers.  (*Id.* at 81).  Ms. Brown then admitted that she had in fact signed the Affidavit, but only reviewed the second page and not the entire document prior to signing.  (*Id.*).

On November 26, 2012, the State filed an amended information charging Petitioner with an additional count of witness tampering.  (ECF No. 3-1 at 7).  That same day, the State represented to the court that Ms. Brown was present and desired to speak to the court.  (ECF No. 3-6 at 4).  The State represented to the court that it believed Ms. Brown was about to commit perjury and requested the court advise Ms. Brown that she has the right to an attorney.  (*Id.* at 4–5).  Ms. Brown was then sworn in.  Prior to testifying, the court advised Ms. Brown that anything she says can be used against her if the statements are false, and she could be charged with perjury.  (*Id.* at 7).  The court then asked if Ms. Brown first wanted to speak to an attorney, to which Ms. Brown confirmed that she was represented.  The court then requested Ms. Brown call her attorney so that he could be present while being asked questions.  (*Id.* at 8).  Ultimately, Ms. Brown did not testify.

On January 30, 2013, Petitioner entered a plea on all charges.  (ECF No. 3-7).  At the change of plea, the court asked whether there was approval by the victim, Ms. Brown, of the plea.  (*Id.* at 7).  The State responded, "Judge, if you recall this is the victim who came to court and attempted to recant in front of your honor.  At this point [in] time the State believes that this is in everyone's best interest."  (*Id.*).  Pursuant to the plea agreement, the State waived multiple minimum mandatory sentences and Petitioner was sentenced to credit time served and 5 years'

probation.  (ECF No. 8-1 at 31); (ECF No. 7 at 24).  Judgment was entered on February 7, 2013, (ECF No. 8-1 at 27), and no appeal was taken.

On July 23, 2013, an amended affidavit of violation of probation was filed, alleging that Petitioner had violated his conditions of probation (1) by failing to make a full and truthful report to the probation officer by falsely reporting to probation of not having contact with law enforcement, when he had been interviewed by Miami-Dade Police Department on May 17, 2013; (2) by failing to make a full and truthful report to the probation officer by falsely reporting to probation of not having contact with law enforcement when he had been arrested on May 30, 2013; (3) by associating with persons engaged in criminal activity; (4) for committing a new criminal offense of trespass after warning; (5) by committing a new criminal offense of resisting arrest without violence; and (6) by failing to pay fees/costs associated with supervision.  (*Id.* at 42–43). Based on these violations, the court revoked Petitioner's probation and sentenced Petitioner to 40 years imprisonment, followed by 10 years of probation.  (*Id.* at 45, 49).[5]

### B. Procedural Background

Petitioner appealed the sentence imposed on his probation violations and raised three errors: (1) the trial judge committed error in not recusing herself from further proceedings in the case and should have recused from presiding over the probation violation hearing; (2) the State did not prove that Petitioner committed a willful and substantial violation of his probation; and (3) the trial court erred in not making written findings that Petitioner was a danger to the community and in issuing a written revocation order that was not consistent with the oral pronouncement.  (*Id.* at 53–91).  The Third District Court of Appeal of Florida affirmed the revocation of Petitioner's probation but remanded for correction of the revocation order to exclude the violation for failure

---

[5]  The court subsequently entered a corrected sentencing order crediting 662 days of time served to Petitioner.  (*Id.* at 51).

to pay costs. *Pierre v. State*, 197 So. 3d 604 (Fla. 3d DCA 2016); (ECF No. 8-2 at 2).  Petitioner then moved for a rehearing, which was denied.  (ECF No. 8-2 at 4, 15).  The mandate from the Third District Court of Appeal was issued August 1, 2016.  (*Id.* at 17).

On August 17, 2017, Petitioner filed an untimely motion for post-conviction relief, pursuant to Florida Rule of Criminal Procedure 3.850 ("Rule 3.850 Motion"), alleging newly discovered evidence of innocence.  (ECF No. 3-10).  The new evidence included an un-notarized affidavit from Ms. Brown dated February 22, 2017 (the "2017 Affidavit").  (*Id.* at 21).  In the 2017 Affidavit, Ms. Brown states that she did not witness anything in the original attempted murder case, nor was she ever threatened by Petitioner by either a rock or firearm in this case.  (ECF No. 3-9 at 2).  Ms. Brown claimed that she never spoke to Detective Passmore following the 2012 Affidavit.  (*Id.*).  Ms. Brown further stated that in November of 2012 she planned to recant in court, but was scared to do so because of the statements the judge and the prosecutors made that day. (*Id.* at 3).  After conducting an evidentiary hearing, the court denied the Motion because it found Ms. Brown latest affidavit was not newly discovered evidence.   (ECF Nos. 3-15, 3-16). Accordingly, the court rejected Petitioner's tolling argument, and denied the Rule 3.850 Motion as untimely.

Petitioner appealed the decision asserting it was error to deny the Rule 3.850 motion based on the finding that Ms. Brown's affidavit was not newly discovered evidence.  (ECF No. 3-17). The Third District Court of Appeal affirmed the decision.  (ECF Nos. 3-20, 3-22); *Pierre v. State*, 303 So. 3d 214 (Fla. 3d DCA 2020).  Petitioner filed a motion for rehearing, rehearing en banc, or for written opinion, (ECF No. 8-2 at 128), which was denied.  The mandate was issued on August 19, 2020.  (ECF No. 3-22).

On May 25, 2021, Petitioner filed the instant Petition for a writ for habeas corpus pursuant to 28 U.S.C. § 2254, raising three grounds for relief: (1) counsel was ineffective for failing to investigate Ms. Brown as a witness; (2) the State failed to disclose exculpatory evidence and not manufacture inculpatory evidence; and (3) Petitioner is actually innocent of the underlying charges.

## II.   LEGAL STANDARD

The Court's review of a state prisoner's federal habeas corpus petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Abdul-Kabir v. Quarterman*, 550 U.S. 233, 246 (2007). The AEDPA ensures that federal habeas corpus relief works to "guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *See Greene v. Fisher*, 565 U.S. 34, 38 (2011) (quotations omitted). The "AEDPA's statutory scheme is designed to strongly discourage" petitioners from presenting new evidence and ensures that "federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Cullen v. Pinholster*, 563 U.S. 170, 185 (2011) (alterations and citations omitted). The AEDPA standard is both mandatory and difficult to meet. *White v. Woodall*, 572 U.S. 415, 419–20 (2014). It imposes a "highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quotations and citations omitted); *Lee v. Comm'r, Ala., Dep't of Corr.*, 726 F.3d 1172, 1192 (11th Cir. 2013).

Petitioner bears the burden of establishing his right to federal habeas corpus relief and proving all of the facts necessary to demonstrate a constitutional violation. *See Fillmore v. Perry*,

163 F. App'x 819, 820 (11th Cir. 2006) (per curiam) (citing *Romine v. Head,* 253 F.3d 1349, 1357 (11th Cir. 2001)).

### III.    ANALYSIS

#### A.    Timeliness

Pursuant to the AEDPA, a one-year limitations period applies to the filing of an application for a writ of habeas corpus by a person in custody pursuant to a state court judgment. 28 U.S.C. § 2244(d)(1). "The one-year limitation period runs from the latest of the following events, in pertinent part: (A) the date on which a judgment becomes final, calculated from the conclusion of direct review or from the expiration of the time allowed to seek such review; or (D) the date on which, as a result of exercising due diligence, the petitioner could have discovered the factual predicate of the claim or claims presented." *Frederick v. Sec'y Dep't of Corr.*, 481 F. App'x 472, 473 (11th Cir. 2012). The time period to bring forth an application is tolled during the pendency of a "properly filed application for State post-conviction or other collateral review." 28 U.S.C. § 2244(d)(2). A motion is "properly filed" if it is timely. *See Webster v. Moore*, 199 F.3d 1256, 1258–59 (11th Cir. 2000).

Petitioner was sentenced to 40 years imprisonment, followed by 10 years of probation for violations of probation. (ECF No. 8-1 at 45, 49). Petitioner then appealed the sentence imposed on his probation violations. The Third District Court of Appeal affirmed the revocation of Petitioner's probation but remanded for correction of the revocation order to exclude the violation for failure to pay costs. *Pierre v. State*, 197 So. 3d 604 (Fla. 3d DCA 2016); (ECF No. 8-2 at 2). Petitioner then moved for a rehearing, which was denied on July 15, 2016. (ECF No. 8-2 at 4, 15). Petitioner's state judgment became final when the motion for rehearing was denied, and thus he had 90 days to file a writ of certiorari—until October 13, 2016. *Bond v. Moore*, 309 F.3d 770, 774

(11th Cir. 2002).  Thus, under § 2244(d)(1)(A), Petitioner had through October 13, 2017, absent any tolling, to file a timely federal habeas corpus petition.

Petitioner argues that the statute of limitations should be calculated one year from the evidentiary hearing on Petitioner's Rule 3.850 Motion on June 15, 2018 during which Ms. Brown provided information regarding the prosecutions' conduct that Petitioner's counsel could not have previously known.  Because Ms. Brown's testimony occurred while the limitations period was tolled for Petitioner's Rule 3.850 Motion, Petitioner asserts that the time began to run on August 19, 2020, when the Third District Court of Appeal issued its mandate.  Having filed the instant Petition on May 25, 2021, Petitioner argues his Petition is timely.  The State, by contrast, argues that the statute of limitations began to run on October 13, 2016 and ran until the filing of Petitioner's Rule 3.850 Motion; was tolled during its pendency; and resumed running when the appellate court issued its mandate on August 19, 2020.  The State calculates the expiration of the statute of limitations then to have occurred on October 8, 2020 (308 days before Petitioner's Rule 3.850 Motion was filed plus 57 days after the mandate), rendering this Petition more than 200 days past the filing deadline.  This Court agrees with the State's conclusion that the Petition is untimely, though disagrees with its assumption that the post-conviction motion tolled the statute of limitations.

AEDPA's limitations period is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); *see also Kearse v. Sec'y, Fla. Dep't of Corr.*, 736 F.3d 1359, 1362 (11th Cir. 2013) ("In order to toll the statute of limitations, the application for state postconviction relief must be properly filed.").  A state postconviction motion is "properly filed" when "its delivery and acceptance are in compliance with the applicable laws and rules governing filings."  *Artuz v.*

*Bennett*, 531 U.S. 4, 8 (2000) (emphasis omitted).  An untimely state postconviction motion thus does not toll AEDPA's limitations period.  *See Sutton v. Dixon*, No. 20-23156-CIV, 2023 WL 8698343, at *5 (S.D. Fla. Dec. 15, 2023) (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) ("When a postconviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2)."); *see also Walton v. Sec'y, Fla. Dep't of Corr.*, 661 F.3d 1308, 1310 (11th Cir. 2011) ("An application for postconviction relief filed in state court is not 'properly filed' if it is untimely.").

In ruling on Petitioner's Rule 3.850 Motion, the court found that Petitioner failed to present newly discovered evidence and that his Motion was time barred pursuant to Florida Rule of Criminal Procedure 3.850(b)(1).  (ECF No. 3-16).  This decision was then affirmed on appeal. (ECF No. 3-20).  That the court found Petitioner's postconviction motion time barred "necessarily means that the motion [was not] 'properly filed,' and thus it [did not] toll AEDPA's one-year statute of limitations." *Jones v. Sec'y, Fla. Dep't of Corr.*, 906 F.3d 1339, 1350 (11th Cir. 2018); *Sweet v. Sec'y, Dep't of Corr.*, 467 F.3d 1311, 1318 (11th Cir. 2006) ("[W]hen a state court unambiguously rules that a post-conviction petition is untimely under state law, we must respect that ruling and conclude that the petition was not 'properly filed' for the purposes of § 2244(d)(2)."); *Powell v. Sec'y, Dep't of Corr.*, No. 5:19-CV-362-VMC-PRL, 2022 WL 3042509, at *4 (M.D. Fla. Aug. 2, 2022) (finding an untimely postconviction motion was not properly filed, and had no tolling effect on the petitioner's AEDPA limitations period); *Mills v. Florida*, No. 22-14404-CIV, 2024 WL 264148, at *4 (S.D. Fla. Jan. 9, 2024), *report and recommendation adopted*, No. 22-14404-CV, 2024 WL 262753 (S.D. Fla. Jan. 24, 2024) (same).

Without finding that the testimony *did* constitute new evidence, the state evidentiary hearing occurred on June 15, 2018; the one-year period within which to file the Petition expired

on June 15, 2019.  Petitioner's argument that a pending state postconviction motion tolled the time within which to file his Petition is refuted.  Without said tolling, whether Petitioner's triggering date for the limitations period is calculated as of the date of the evidentiary hearing does not impact the ultimate finding of untimeliness.

However, "'[i]f a defendant files a petition for a federal writ of a habeas corpus beyond section 2244(d)(1)'s one-year limitation period,' the court can still review the otherwise untimely petition if one of two equitable exceptions are met: 'equitable tolling' or 'actual innocence.'" *Gerome v. Fla. Dep't of Corr.*, No. 23-23778-CIV, 2024 WL 1759137, at *5 (S.D. Fla. Apr. 24, 2024) (quoting *San Martin v. McNeil*, 633 F.3d 1257, 1267 (11th Cir. 2011)) (alterations omitted). Petitioner here asserts that both exceptions apply.

**B.      Equitable Tolling**

Petitioner argues that the time during which he was negotiating with state prosecutors for a sentence reduction should equitably toll his time to file his Petition.

"[T]he time period specified in 28 U.S.C. § 2244 is a statute of limitations, not a jurisdictional bar, and Section 2244 does not bar the application of equitable tolling in an appropriate case." *San Martin*, 633 F.3d at 1267.  A petitioner is entitled to equitable tolling "only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing" of his § 2254 petition.  *Holland v. Florida*, 560 U.S. 631, 649 (2010).  "The burden of proving circumstances that justify the application of the equitable tolling doctrine rests squarely on the petitioner."  *San Martin*, 633 F.3d at 1268.  A petitioner must "show a causal connection between the alleged extraordinary circumstances and the late filing of the petition."  *Id.* at 1267.  Because this is a "difficult burden" to meet, the Eleventh Circuit "has rejected most claims for equitable tolling."  *Diaz v. Sec'y, Dep't*

*of Corr.*, 362 F.3d 698, 701 (11th Cir. 2004); *see also Johnson v. United States*, 340 F.3d 1219, 1226 (11th Cir. 2003) ("[E]quitable tolling applies only in truly extraordinary circumstances."); *Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000) ("Equitable tolling is an extraordinary remedy which is typically applied sparingly.").

Petitioner asserts that between August 20, 2020 until May 11, 2021 Petitioner's counsel was involved in negotiations with the Maimi-Dade State Attorney's Office to mitigate Petitioner's sentence. During this time, Petitioner's counsel represents he made the decision to not file the instant Petition in part because of the risk of prejudice to the negotiations if such a petition was filed. He argues that equitable tolling should apply to this time. The State disputes that these discussions had any impact on the tolling of the *federal* law applicable to this habeas petition, and further notes that he could have filed the petition and sought a stay of decision pending the outcome of these negotiations.

Petitioner's argument for equitable tolling during negotiations with the State implicitly depends on his assumption that his Rule 3.850 Motion was properly filed and thus tolled the statute of limitations until at least August 20, 2020. As explained above, because the Rule 3.850 Motion was not properly filed, it did not toll the statute of limitations, which elapsed on October 13, 2017. Accordingly, the events between 2020 and 2021 could not equitably toll a deadline that had already elapsed.

### C.    Actual Innocence

Petitioner contends his Petition is reviewable under the actual innocence exception, arguing that the most recent affidavit from Ms. Brown, the 2017 Affidavit, now confirms Petitioner never committed these crimes and Petitioner only pled guilty to the charges due to the State successfully

intimidating Ms. Brown into inculpating him and defense counsel failing to properly investigate the case.

Respondent asserts that Petitioner fails to meet the standard for actual innocence because Ms. Brown's recantation of the underlying events was well known to Petitioner and his attorneys prior to Petitioner pleading guilty.

Notwithstanding AEDPA's one-year statute of limitations, it has been recognized that the untimeliness of a habeas petition can be overcome—thereby opening the door to review—through a credible showing of actual innocence. *McQuiggin v. Perkins*, 569 U.S. 383, 393–94 (2013). "Habeas petitioners asserting actual innocence as a gateway to review of defaulted or time-barred claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable [trier of fact] would have found petitioner guilty beyond a reasonable doubt.'" *Moncrief v. Baldwin*, No. 2:22-CV-123-RAH-KFP, 2023 WL 8610127, at *4 (M.D. Ala. Nov. 7, 2023), *report and recommendation adopted*, No. 2:22-CV-123-RAH-KFP, 2023 WL 8606731 (M.D. Ala. Dec. 12, 2023) (applying the instant standard to a petitioner who pled guilty) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)); *Jarrell v. Bolling*, No. 1:19-CV-564-ECM-SRW, 2022 WL 2111838, at *3 (M.D. Ala. May 6, 2022), *report and recommendation adopted*, No. 1:19-CV-564-ECM, 2022 WL 2110411 (M.D. Ala. June 10, 2022) (same); *Toth v. Jones*, No. 18-CV-80067, 2018 WL 10436278, at *7 (S.D. Fla. Jan. 25, 2018), *report and recommendation approved*, No. 18-80067-CIV, 2018 WL 10436260 (S.D. Fla. Feb. 14, 2018), *aff'd sub nom. Toth v. Sec'y, Fla. Dep't of Corr.*, 778 F. App'x 624 (11th Cir. 2019) (same).

"[This] standard is demanding and permits review only in the 'extraordinary' case." *House v. Bell*, 547 U.S. 518, 538 (2006). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623–24 (1998); *Doe v. Menefee*, 391 F.3d

147, 162 (2nd Cir. 2004) ("As *Schlup* makes clear, the issue before [a federal district] court is not legal innocence but factual innocence."). The Supreme Court provided in *Schlup*:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare . . . . To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

513 U.S. at 324.

In asserting actual innocence Petitioner relies on the postconviction affidavit executed by the victim in the underlying case, Ms. Brown. *See* (ECF No. 3-9). In this affidavit, Ms. Brown claims that Petitioner never threatened her, never pointed a firearm at her, nor threatened her with a rock—the crimes Petitioner was convicted of in the underlying case. (*Id.* at 1). This 2017 Affidavit was the subject of state postconviction proceedings wherein the Petitioner unsuccessfully attempted to circumvent the state's limitation period by demonstrating that he was innocent based upon newly discovered evidence. *See* (ECF No. 3-16).

Though Petitioner claims Ms. Brown's latest recantation is newly discovered evidence, Ms. Brown provided several inconsistent statements regarding the underlying allegations before Petitioner pled guilty. As the state postconviction court has determined, the 2017 Affidavit is not newly discovered.

As Respondent notes, Ms. Brown originally authored a sworn affidavit attesting to similar assertions on July 23, 2012, the 2012 Affidavit—that Petitioner did not point a firearm at her nor did he threaten her with a rock. (ECF No. 3-4). After the 2012 Affidavit, the State represented in a Motion to revoke or increase Petitioner's bond to the trial court that, on August 11, 2012, Detective Passmore spoke with Ms. Brown who told him that she went to Petitioner's counsel's office to sign the 2012 Affidavit because people were threatening her and she was in fear of

retaliation for her cooperation.  (ECF No. 3-5 at 3).  The State filed an amended discovery exhibit that represents that, on August 27, 2012, Detective Passmore took an additional statement from Ms. Brown wherein she states that she went to see Petitioner's attorney after receiving threats from Petitioner's common associates.  (ECF No. 3-11 at 4, 41).  The State represents that Ms. Brown asserted she wanted the charges dropped so that nothing would happen to her and that she signed the affidavit because she was afraid of Petitioner.  (*Id.* at 4).  The State represents that, at that time, Ms. Brown further confirmed that she was in fact threatened with a rock and a firearm by Petitioner on March 23 and 26, 2012.  (*Id.*).

On November 20, 2012, state prosecutors met with Ms. Brown to discuss the various versions of events she had provided.  (*Id.*).  The State then filed an Amended Discovery Exhibit representing the contents of that conversation.  (*Id.*).  At that meeting, Ms. Brown stated that she had never been to Petitioner's counsel's office, that she did not sign the 2012 Affidavit, and that the signature on the 2012 Affidavit was not hers.  (*Id.* at 81).  The State represents that, in that same conversation, Ms. Brown then admitted that she had in fact signed the 2012 Affidavit, but only reviewed the second page and not the entire document prior to signing; that she had not read the arrest warrant detailing the underlying charges in the case; and that she had not been threatened by any specific individuals related to Petitioner.  (*Id.*).

The 2017 Affidavit can hardly be considered new in that Ms. Brown's recantation was well known to Petitioner, as noted above.  The 2012 Affidavit recites identical exculpatory statements. Indeed, Ms. Brown appeared in court on November 26, 2012 to recant, as evidenced by the prosecutor alerting the trial court that Ms. Brown was "about to commit perjury," and Ms. Brown stating on the record that she was not in fear for her life.  (ECF No. 3-6 at 5).  Because Petitioner knew of Ms. Brown's recantations "and still pleaded guilty, 'it is difficult for him to now argue

that this evidence is new and is of such exculpatory value that no reasonable juror could have convicted him because of it.'" *Moncrief*, 2023 WL 8610127, at *5; *Morales v. McNeil*, No. 09-21335-CIV-GOLD, 2010 WL 2976552, at *3 (S.D. Fla. June 14, 2010), *report and recommendation adopted*, No. 09-21335-CIV-GOLD, 2010 WL 2976550 (S.D. Fla. July 20, 2010) ("What little doubt, if any, the new affidavit might raise as to [Petitioner's] guilt, it in no way undermines the fact that [Petitioner] entered into a knowing and voluntary guilty plea."); *Toth*, 2018 WL 10436278, at *7 ("Petitioner's conviction of guilt rests on his guilty plea.  Furthermore, his ten year sentence (and the consecutive five-year sentence) is one that he negotiated in the face of a maximum sentence of life in prison.").

For the foregoing reasons, the undersigned finds that Petitioner has not demonstrated that he is actually innocent and, therefore, the undersigned recommends that the Petition be dismissed as untimely.

In recognition that the District Court could disagree regarding the timeliness of the instant Petition, the undersigned proceeds to Petitioner's grounds for relief.

**D.      Petitioner's Grounds for Relief**

Petitioner raises the following three claims in his Petition: (1) counsel was ineffective for failing to investigate Ms. Brown as a witness; (2) the State failed to disclose exculpatory evidence and manufactured inculpatory evidence; and (3) Petitioner is actually innocent of the underlying charges.

**1.      Petitioner's Ineffective Assistance of Counsel Claim Is Procedurally Defaulted**

In Ground One, Petitioner alleges that counsel failed to investigate Ms. Brown as a witness and discover her version of events.  Petitioner asserts that, based on the fact that Ms. Brown has fully recanted the underlying incidents resulting in Petitioner's convictions as provided in the 2017

Affidavit, if counsel had properly investigated Ms. Brown as a witness, this would have created an outcome-changing defense and Petitioner would have rejected the plea.

Respondent asserts that Petitioner has failed to exhaust these claims, which were not presented to the state court; and the claims are procedurally defaulted under Florida law, as the time to file a timely post-conviction motion presenting the claims has expired.[6]

Habeas petitioners generally cannot raise in federal court claims that were not first exhausted in state court. *See* 28 U.S.C. § 2254(b)(1)(A) (requiring that "the applicant has exhausted the remedies available in the courts of the state"). To qualify as exhausted, a federal claim must be "fairly presented" to the state court. *Picard v. Connor*, 404 U.S. 270, 275; *Brown v. Dixon*, 591 F. Supp. 3d 1251, 1266 (S.D. Fla. 2022), *certificate of appealability denied sub nom. Brown v. Dep't of Corr.*, No. 22-11344-H, 2023 WL 3064699 (11th Cir. Feb. 17, 2023). And, to be fairly presented, "[i]t is not sufficient merely that the federal habeas petitioner has been through the state courts . . . nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made." *Kelley v. Sec'y, Fla. Dep't of Corr.*, 377 F.3d 1317, 1343–44 (11th Cir. 2004). Rather, "a state prisoner [must] present the state courts with the same claim he urges upon the federal courts." *Picard*, 404 U.S. at 275 (citations omitted). In doing so, the petitioner must present his claims in such a way "that a reasonable reader would understand each claim's particular legal basis and specific factual

---

[6] In his Reply, Petitioner does not address Respondent's arguments on exhaustion or procedural default, thus they remain uncontroverted. Petitioner seems to concede in his Petition that his Constitutional claims (alleged failure to disclose exculpatory evidence and manufactured inculpatory evidence and ineffective assistance of counsel) are procedurally barred. *See* (ECF No. 1 at 2) ("After an unsuccessful state postconviction appeal to the Third District Court of Appeals, case 3D18-1659, thus exhausting his avenues to relief in state court, and having either exhausted *or being procedurally barred* in state court from raising related Constitutional claims (the State's misconduct in withholding exculpatory evidence and manufacturing or threatening their alleged victim into producing inculpatory evidence, and ineffective assistance of counsel), Mr. Pierre now files his initial § 2254 petition with this Court."); (emphasis added); (*Id.* at 48) ("[Petitioner] has raised meritorious, *though arguably procedurally defaulted*, claims of constitutional error leading to the state court conviction, both ineffective assistance of counsel and prosecutorial misconduct, which resulted in him having a false understanding of what Kiani Brown would testify to.") (emphasis added).

foundation." *Kelley*, 377 F.3d at 1344–45 (citing *Picard*, 404 U.S. at 277). Finally, the petitioner must "present his claims to the state's highest court, even if such review is discretionary, if such review is part of the ordinary appellate review procedure." *Mancill v. Hall*, 545 F.3d 935, 939 (11th Cir. 2008). In practice, these rules "afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005).

Because Petitioner asserts an ineffective assistance of counsel, he was under no obligation to assert this claim on direct appeal. *Brown*, 591 F. Supp. 3d at 1266; *see Telisme v. State*, 259 So. 3d 862, 863 (Fla. 4th DCA 2018) ("In general, this court will not consider a claim of ineffective assistance of counsel on direct appeal. However, ineffective assistance that is apparent on the face of the record and which causes obvious prejudice may be considered on direct appeal."). However, under state law, he did have to bring his claim of ineffective assistance of trial counsel to the attention of the postconviction trial court. *Brown*, 591 F. Supp. 3d at 1266; *See Owens v. State*, 920 So. 2d 59, 61 (Fla. 4th DCA 2005) ("We decline to consider the merits of these motions [challenging counsel's ineffectiveness at trial] before the trial court does so and thus reverse and remand for the trial court to consider both motions on the merits.").

And, to have properly exhausted his claim, Petitioner was required to comply with all applicable state procedures. *See Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010) ("If a petitioner fails to properly present his claim to the state court—by exhausting his claims and complying with the applicable state procedure—prior to bringing his federal habeas claim, then AEDPA typically bars us from reviewing the claim." (quotations omitted)); *see also Powell v. Allen*, 602 F.3d 1263, 1269 (11th Cir. 2010) ("Exhaustion requires that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete

round of the State's established appellate review process." (quotations omitted)). Unfortunately, as Respondent points out, Petitioner's ineffective assistance of counsel claim was not raised in the postconviction proceedings, neither in the briefing nor the evidentiary hearing held on Petitioner's Rule 3.850 Motion. *See generally* (ECF Nos. 3-10, 3-12, 3-14, 3-15). Accordingly, this claim was not fairly presented to the state court. *Crayton v. Sec'y, Dep't of Corr.*, No. 17-15290-C, 2019 WL 2374452, at *4 (11th Cir. May 15, 2019) (finding petitioner's ineffective assistance claims were not fairly presented to the state court); *see Kelley v. Sec. for Dep't of Corr.*, 377 F.3d 1317, 1343–43 (11th Cir. 2004) ("It is not sufficient merely that the federal habeas petitioner has been through the state courts, nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made." (citations omitted)).

Further, Petitioner's unexhausted ineffective assistance of counsel claim is also procedurally defaulted because if Petitioner attempted to bring the claim now in state court, it would be dismissed as untimely and successive under Rule 3.850. *See Reyes v. Fla. Dep't of Corr.*, No. 22-CV-60567, 2023 WL 3178563, at *7 (S.D. Fla. Apr. 11, 2023), *report and recommendation adopted*, No. 22-CV-60567-RAR, 2023 WL 3172551 (S.D. Fla. May 1, 2023); *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (stating that "if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," then "there is a procedural default for purposes of federal habeas"); *Bailey v. Nagle*, 172 F.3d 1299, 1305 (11th Cir. 1999) ("[F]ederal courts may treat unexhausted claims as procedurally defaulted, even absent a state court determination to that effect, if it is clear from state law that any future attempts at exhaustion would be futile."); *Newson v. Sec'y, Dep't of Corr.*, 797 F. App'x 488, 494 (11th Cir. 2019) (noting that a federal claim is subject to procedural default where the petitioner failed to

properly exhaust it in state court, and it is obvious that the unexhausted claim would now be barred under state procedural rules); *see also* Fla. R. Crim. P. 3.850(b), (h)(2) (listing the two-year limitation for filing 3.850 motions and stating that successive 3.850 motions are barred).

Indeed, as noted above, Petitioner's only Rule 3.850 Motion was denied as time barred. *See Dean v. Sec'y, Fla. Dep't of Corr.*, No. 3:19-CV-1191-MMH-MCR, 2022 WL 17405610, at *17 (M.D. Fla. Dec. 2, 2022), *certificate of appealability denied*, No. 23-10047, 2024 WL 3311720 (11th Cir. Feb. 22, 2024) (noting that, because a Rule 3.850 Motion was dismissed as untimely that the petitioner's claims were procedurally barred and, with any future attempt to exhaust these claims being futile, petitioner's claims were procedurally defaulted).

There are two exceptions to the general rule that a federal court may not consider a procedurally defaulted claim on the merits: "cause and prejudice" and "actual innocence." *See Dretke v. Haley*, 541 U.S. 386, 393 (2004). As noted above, Petitioner has not sufficiently demonstrated actual innocence.

Turning to the remaining exception, "[t]o establish 'cause' for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999); *see also Maples v. Thomas*, 565 U.S. 266, 280 (2012). "To establish prejudice, a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different." *Harris v. Comm'r, Ala. Dep't of Corr.*, 874 F.3d 682, 688 (11th Cir. 2017).

Petitioner does not attempt to excuse his failure to exhaust Ground One by pointing to an "external cause," nor address this failure in any way—which is sufficient to find the issue forfeited. *Brown*, 591 F. Supp. 3d at 1272; *Gordon v. Nagle*, 2 F.3d 385, 388 n.4 (11th Cir. 1993) ("A defendant has the burden of establishing cause and prejudice."); *see also United States v.*

*Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) (en banc) ("[F]ailure to raise an issue in an initial brief . . . should be treated as a forfeiture of the issue, and therefore the issue may be raised by the court *sua sponte* [only] in extraordinary circumstances.").  Because Petitioner has not established any external "cause" for his failure to exhaust Ground One, the Court need not reach the "prejudice" prong.  *Files v. Givens*, No. 218CV01346LSCHNJ, 2019 WL 7631002, at \*3 (N.D. Ala. Nov. 22, 2019), *report and recommendation adopted*, No. 218CV01346LSCHNJ, 2020 WL 362937 (N.D. Ala. Jan. 22, 2020) ("Because the 'cause and prejudice' exception expresses in the conjunctive, a petitioner must prove both cause and prejudice to excuse his procedural default.") (finding petitioner had not alleged or provided any evidence of cause and prejudice for his procedural default).

     As a result, the undersigned finds that Ground One is procedurally defaulted.  Based upon the finding of procedural default, the court may not review the merits of the instant claim.  *See Gore v. Crews*, 720 F.3d 811, 816 (11th Cir. 2013) ("Under the doctrine of procedural default, a federal habeas court may not review the merits of a claim that is procedurally barred unless the petitioner can demonstrate cause for the default and actual prejudice, or that he is actually innocent of his crime of conviction."); *Files*, 2019 WL 7631002, at \*4; *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001) ("If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established.").

### 2.    Petitioner's *Brady* Claim Is Procedurally Defaulted

     In Ground Two, Petitioner alleges that the prosecutors failed to properly disclose exculpatory evidence under *Brady* and improperly manufactured inculpatory evidence.  Plaintiff asserts that, according to Ms. Brown's statements in the 2017 Affidavit and in her testimony at the

state evidentiary hearing, the prosecution both coerced and threatened her into providing false inculpatory evidence and failed to disclose to the defense exculpatory statements Ms. Brown made.

"*Brady* claims often arise and can be presented only after direct appeals are exhausted." *Hamm v. Comm'r, Alabama Dep't of Corr.*, 620 F. App'x 752, 784 (11th Cir. 2015).  Under state law, Petitioner was required to raise his *Brady* claim in the postconviction trial court.  *See Smith v. State*, 931 So. 2d 790, 798 (Fla. 2006) (finding that, because a failure to disclose was not raised in the postconviction motion, it was not preserved for review); *Smith v. Sec'y, Dep't of Corr.*, 572 F.3d 1327, 1338 (11th Cir. 2009).

As the Respondent notes, this claim was not argued in the postconviction proceedings, neither in the briefing nor the evidentiary hearing held on Petitioner's Rule 3.850 Motion.  *See generally* (ECF Nos. 3-10, 3-12, 3-14, 3-15).  The only mention before the state court this Court could ascertain in the record is at the evidentiary hearing on Petitioner's Rule 3.850 Motion.  Petitioner's counsel states in relevant part:

> [Ms. Brown] testified to interactions she had had with the prosecutors outside of court where she was further intimidated, which were never, you know, turned over to defense in Brady.  And, you know, so legally, we have met our burden because this is new.  This was not what was known.

(ECF No. 3-15 at 301).  However, this brief mention by Petitioner's counsel failed to properly raise the issue before the state court.  As the excerpt reveals, Petitioner's counsel only mentioned the *Brady* violation in the context of his argument that Petitioner had met his burden in identifying newly discovered evidence—not that a substantive *Brady* violation in fact occurred.  Nor would any "reasonable reader" of Petitioner's appeal understand that he was grounding his argument in federal law as required.  *Kelley*, 377 F.3d at 1344–45 (citing *Picard*, 404 U.S. at 277).  Petitioner thus failed to "afford the state courts a meaningful opportunity to consider allegations" that his

federal rights had been infringed.  *McNair*, 416 F.3d at 1302.  Accordingly, this claim was not exhausted.

Further, and as with Ground One, Petitioner's *Brady* claim is also procedurally defaulted because if Petitioner attempted to bring the claim now in state court, it would be dismissed as untimely and successive under Rule 3.850.  *See* Fla. R. Crim. P. 3.850(b), (h)(2) (listing the two-year limitation for filing 3.850 motions and stating that successive 3.850 motions are barred).  Indeed, Petitioner's state judgment for his sentence on probation violations became final on October 13, 2016, for which the limitations period for filing a Rule 3.850 Motion would have expired approximately six years ago.

Regarding the exceptions to the general rule that a federal court may not consider a procedurally defaulted claim on the merits, Petitioner has not alleged or provided any evidence of cause and prejudice for this procedural default.  *Files*, 2019 WL 7631002, at *4.  Nor, as discussed above, has Petitioner met the burden of establishing actual innocence.  As a result, the undersigned finds that Ground Two is procedurally defaulted.[7]  Based upon the finding of procedural default, the Court may not review the merits of the instant claim.  *See Gore*, 720 F.3d at 816.

### 3.    Petitioner Cannot Assert a Freestanding Claim for Actual Innocence

In Ground Three, Petitioner asserts a claim of actual innocence.  Plaintiff contends that the 2017 Affidavit from Ms. Brown demonstrates his actual innocence and that the state court rendered an unreasonable determination that the 2017 affidavit was not newly discovered in light of the evidence presented.

---

[7]  In the event Petitioner intended to assert a claim of prosecutorial misconduct distinct from the asserted *Brady* violation, this claim would be procedurally defaulted for the same reasons as Ground Two as described herein.

To the extent that Petitioner asserts actual innocence as a freestanding claim for relief, he cannot prevail because a freestanding claim of actual innocence is not cognizable on habeas review. *Cunningham v. Dist. Att'y for Escambia Cty.*, 592 F.3d 1237, 1272 (11th Cir. 2010) ("[T]his Court's own precedent does not allow habeas relief on a freestanding innocence claim in non-capital cases.") (citing *Jordan v. Sec'y, Dep't of Corr.*, 485 F.3d 1351, 1356 (11th Cir. 2007)); *Drake v. Francis*, 727 F.2d 990, 993 (11th Cir. 1984) ("In order for a claim of newly discovered evidence to justify habeas review, the evidence must bear on the constitutionality of the defendant's conviction."); *Depalma v. Sec'y, Dep't of Corr.*, No. 8:16-CV-1698-T-35CPT, 2019 WL 11638835, at *9 (M.D. Fla. Sept. 25, 2019); *Collins v. Sec'y, Dep't of Corr.*, 809 F. App'x 694, 696 (11th Cir. 2020) ("Our precedent forecloses habeas relief based on a prisoner's assertion that he is actually innocent of the crime of conviction absent an independent constitutional violation occurring in the underlying state criminal proceeding." (alterations omitted)). Petitioner asserts no constitutional violation associated with his claim of actual innocence. *See Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceedings.").

## IV.   EVIDENTIARY HEARING

In a habeas proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing. *See Chavez v. Sec'y, Fla. Dep't of Corrs.*, 647 F.3d 1057, 1060 (11th Cir. 2011). "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Here, the pertinent facts of the case are fully developed, and they establish that habeas relief is precluded. Because the Court can "adequately assess [Petitioner's] claim[s]

without further factual development[,]" Petitioner is not entitled to an evidentiary hearing.  *See Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003).  Therefore, Petitioner's request for an evidentiary hearing should be denied.

## V.    CERTIFICATE OF APPEALABILITY

After careful consideration of the record in this case, it is recommended that no Certificate of Appealability ("COA") issue.  A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA").  *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009).  A certificate of appealability shall issue only if a petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make such a showing, a petitioner must demonstrate that "reasonable jurists" would find the correctness of the district court's rulings "debatable[.]"  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (alteration added). Upon consideration of the record, no certificate of appealability should issue here.  *Gerome*, 2024 WL 1759137, at *7 (finding no basis for a certificate of appealability after finding the petition untimely).

## VI.    RECOMMENDATIONS

Based on the foregoing, the undersigned respectfully **RECOMMENDS** that the federal habeas corpus Petition be **DENIED** and that final judgment be entered in favor of Respondent. Furthermore, the undersigned respectfully recommends a COA be **DENIED** and that the case be **CLOSED**.

A party shall serve and file written objections, if any, to this Report and Recommendations with the Honorable K. Michael Moore, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and

Recommendations.  Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida, this 11th day of July, 2024.

_____
LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE